**Alvin H. FRANKEL, Esquire, Guardian of the Estate of Nydia Pasceri, a Minor, Appellant,**

v.

**John H. TODD, Jr.**

v.

**Grayson MOORE, Jr., a Third-Party Defendant.**

No. 16364.

United States Court of Appeals Third Circuit.

Argued May 22, 1967.

Reargued Nov. 6, 1967.

Decided April 10, 1968.

Rehearing Denied May 13, 1968.

B. Nathaniel Richter, Richter, Lord, Toll, Cavanaugh, McCarty & Raynes, Philadelphia, Pa. (Donald J. Williams, Kenneth Syken, Philadelphia, Pa., on the brief), for appellant.

Peter P. Liebert, III, Liebert, Harvey, Bechtle, Herting & Short, Philadelphia, Pa. (James P. Gannon, Philadelphia, Pa., on the brief), for appellee.

Before STALEY, Chief Judge, and KALODNER and FREEDMAN, Circuit Judges.

## OPINION ON REHEARING

KALODNER, Circuit Judge.

The critical question presented,[1] is whether, at the trial of the minor plaintiff's personal injury action, the District Court erred in refusing, in the light of her undisputed disabling permanent injury, to submit to the jury, as an item of damages, the issue of impaired earning capacity.

Since jurisdiction is based on diversity of citizenship and the accident which led to this action occurred in Pennsylvania the law of that Commonwealth applies.

Necessary to our disposition of the stated question are these facts:

On May 13, 1961, the minor plaintiff, then 19 years old and a student at a teachers' college, was a passenger in defendant's automobile when it ran off the road and plunged over an embankment. She sustained serious injuries, which, as the District Court charged the jury, included a cerebral concussion, ruptured bladder, damage to other internal organs, and numerous fractures of the pelvic bones which resulted in a tilting of her right hip; the crest of the right hip is approximately one inch higher than the left, resulting in a limping gait.

The District Court in its charge to the jury stated that "There has been no dispute * * * as to the fractures and certain damage to the bladder and other internal organs. * * *" and further instructed the jury as follows:

"You should, therefore, accept the testimony that, in fact, Miss Pasceri [the minor plaintiff] had fractures to the pelvis, that the fractures have resulted in a deformity to the hip, that they have caused a limp, that that condition is permanent, that it cannot be corrected, except by an operation which, at least one of the doctors testified, was a very serious one and whose likelihood of success was so small that he would not recommend such an operation."

Prior to the District Court's charge to the jury it refused to instruct it, as requested by plaintiff's counsel, that "Miss Pasceri would also be entitled to recover a sum representing the extent to which you may find her earning power to have been impaired by reason of her injuries."

In denying the requested instruction the District Court said (pp. 649–650 N. T.)

"Perhaps evidence might have been adduced on this score, but I feel, under the circumstances, I cannot permit the jury to speculate as to the effect that a distorted hip will have on Miss Pasceri's abilities in the future to earn money".

On the score of the requested instruction and the District Court's ruling with respect thereto, it must be noted that (1) plaintiff testified that her head injuries left her with headaches, dizziness, ringing in her ears, and blurring of vision which limits her reading both at school and at home; her hip injury is painful and exhausting; it hampers her in getting about and "slows me down quite a bit"; and (2) plaintiff adduced medical testimony that her sacroiliac joint had suffered serious injury with resulting permanent arthritis creating stress and strain in walking and standing which will get progressively worse and more painful; and plaintiff's back will be permanently painful.

---

1. Plaintiff appealed from a judgment in her favor of $25,000 entered pursuant to the jury's verdict, contending that it was grossly inadequate due to the District Court's erroneous trial rulings in excluding evidence, and its refusal to permit the jury to consider the plaintiff's future loss of earnings as an item of damage. We affirmed Per Curiam, 377 F.2d 553 (3 Cir., 1967), and thereafter granted the plaintiff's petition for rehearing.

In its Opinion, reported at 260 F.Supp. 772 (E.D.Pa.1966), denying the plaintiff's motion for a new trial, based *inter alia*, on refusal to submit to the jury as an item of possible damage her impairment of earning power, the District Court, after noting that the plaintiff had been able to complete her college studies after a 7-week hospitalization period, and that from the time of her graduation until the trial in 1966 she had been employed full time as an elementary school teacher, said in relevant part, at page 775:

"She has not been disabled in the performance of any of her duties, although, as she stated, she has been inconvenienced by the hip deformity in that she is slowed down somewhat in getting around the room to help the children and her back aches and causes her discomfort. One of her medical witnesses testified that if she does not wear a lift in the right shoe, as time goes on the uneven strain on the back muscles will cause the pain in the low back to remain. There was no medical testimony that, even without a lift in the shoe, the pain in the low back would at any time in the future increase to a degree which would interfere with the performance of Miss Pasceri's duties as a teacher. She was, at the time of trial, performing and apparently will be able to continue to perform in the future, full time duty as a teacher, although perhaps with some discomfort. Beyond that, Miss Pasceri is relatively small in stature, standing just under five feet tall and weighing less than ninety pounds. Plaintiff presented no evidence from which the jury could properly conclude that Miss Pasceri's hip deformity will restrict her ability to perform other types of work which, considering her age, physical characteristics, education and training, she would have been likely to do, but for the injury, for the rest of her life. See Restatement, Torts § 924, comment (d) (1939). It is plaintiff's burden to establish impairment of earning capacity by a pre-ponderance of the evidence. The proof on that issue was so lacking here that the jury would have been left entirely to guess and speculation to find and assess such impairment. This would have been improper. See Kmiotek v. Anast, 350 Pa. 593, 39 A.2d 923 (1944) and cases therein cited."

The cases cited in the District Court's Opinion afford no nourishment to its view that it was not required to submit to the jury, as an item of damage, the issue as to possible impairment of earning power in the instant case.

■ It is settled Pennsylvania law that where there is evidence that a plaintiff has suffered disabling permanent injury, it is a jury question as to whether such injury will "shorten" his "economic horizon" and thereby result in a future loss of earning power.

In Messer v. Beighley, 409 Pa. 551, 187 A.2d 168 (1963) it was held that the trial judge erred in failing to submit to the jury, as an item of damages, the question as to impairment of future earning power in view of the testimony that the accident had aggravated the plaintiff's congenital preexisting defect in the lumbosacral region of the spine.

■ After noting (at page 554, 187 A.2d at page 170) that the plaintiff's only medical witness had not described the plaintiff's injury as "permanent" but had only referred to it as "chronic" with "recurrent" episodes of pain, and that the word " 'chronic' signifies continuing for a long time, deep-seated and obstinate or characterized by slowly progressive symptoms", the Court said at page 555, 187 A.2d at page 170:

"It is also noted that *no instructions* were given by the trial judge that the plaintiff could recover for loss or impairment of future earning power. *This was error.* It is clear from the evidence that *this element of damage should have been submitted for the jury's consideration,* be it permanent or merely extending for a period of time in the future. The mere fact that an injured person continues to work at

his employment without diminution of wages does not preclude recovery for impairment of earning power, *if he is in fact disabled:* Holton v. Gibson, 402 Pa. 37, 166 A.2d 4 (1960), and Laymann [Layman] v. Doernte, 405 Pa. 355, 175 A.2d 530 (1961)." (Emphasis supplied.)

Again, in Saganowich v. Hachikian, 348 Pa. 313, 35 A.2d 343 (1944) it was squarely ruled that where there is a permanent disabling injury the question of impairment of earning power must be submitted to the jury. There the plaintiff lost his sight in one eye in an accident. Evidence was adduced at the trial that his earnings were higher at that time than before the accident. The trial judge submitted to the jury impairment of earning power as an element of damage. On the appeal from the jury's verdict allowing damages to the plaintiff, the defendant assigned this submission to the jury as error.

 In disposing of this contention the Court stated at page 316, 35 A.2d at page 345:

"Appellant also contends that it was error to permit the jury to consider future loss of earning capacity as an element of damages, since the injured plaintiff was making more money at the time of the trial than at the date of the accident. We cannot agree with this contention. Damages for loss of *earning capacity* arise out of an impairment of that capacity, and not out of loss of *earnings*. The earnings of the plaintiff subsequent to the injury, as compared with his earnings at the time of the injury, are merely evidence, but not conclusive evidence, as to whether his earning power has been diminished by the accident. *The matter was clearly for the jury. \* \* \*"* (The emphasis as to this last statement is supplied).

The Pennsylvania Supreme Court has ruled, time and again, that the circumstance that a plaintiff's earnings are higher after his injury than before it, is not a bar to recovery of damages for impairment of earning power, where impairment is of disabling effect.

In City of Philadelphia v. Philadelphia Transportation Company, 400 Pa. 315, 162 A.2d 222 (1960), a policeman suffered a shortening of his leg in an accident. Following his convalescence he returned to his duties as a policeman but was not permitted to work on emergency police wagons because he couldn't "run" nor "lift somebody". In finding an impairment of earning power, notwithstanding the fact that the plaintiff had received an increase in pay on his return to work, the Court said (p. 323, 162 A.2d p. 227):

"A policeman who is unable to move rapidly on his feet certainly has had his earning power impaired. The defendant points out that the plaintiff received an increase in salary since the accident, but this, of itself, is not conclusive proof of extent of earning power".

 In the leading case of Bochar v. *J. B. Martin Motors, Inc.,* 374 Pa. 240, 97 A.2d 813 (1953) the plaintiff, a telephone repairman, suffered permanent limitation of motion of the knee which prevented return to his former duties but did not prevent his employment at a desk job without reduction in his earnings. In disposing of the defendant's contention "that there was no evidence of impairment of earning power" because the fact that plaintiff's "wages were higher after the accident than before proves no deterioration of earning ability", the Court said at pages 244–245, 97 A.2d at page 815:

"A tort feasor is not entitled to a reduction in his financial responsibility because, through fortuitous circumstances or unusual application on the part of the injured person, his wages [of the injured person] following the accident are as high or even higher than they were prior to the accident. Parity of wages may show lack of impairment of earning power if it confirms other physical data that the injured person has completely re-

covered from his injuries. Standing alone, however, parity of wages is inconclusive. The office worker who loses a leg has obviously had his earning ability impaired even though he can still sit at a desk and punch a comptometer as vigorously as before. *It is not the status of the immediate present which determines capacity for remunerative employment. Where permanent injury is involved, the whole span of life must be considered. Has the economic horizon of the disabled person been shortened because of the injuries sustained as the result of the tort feasor's negligence? That is the test.* And it is no answer to that test to say that there are just as many dollars in the patient's pay envelope now as prior to his accident. *The normal status of a healthy person is to progress, and to the extent that his progress has been curtailed, he has suffered a loss which is properly computable in damages.*" (Emphasis supplied.)

This Court cited and applied the Pennsylvania rule as laid down in *Bochar*, in Wiles v. New York, Chicago and St. Louis Railroad Company, 283 F.2d 328 (3 Cir. 1960). There the jury awarded the plaintiff, who had suffered serious back injuries, $20,000 for loss of earning power, and the District Court set the award aside on the ground that it was "too speculative", and "[t]here is a complete absence of evidentiary facts on which the jury could intelligently assess the monetary difference between what plaintiff would have been able to earn in the future had he not been injured and what he will be able to earn in his physical condition during his work-life expectancy."

In reversing the District Court's disallowance of the $20,000 award for impairment of earning power, we said in relevant part at page 332:

"Certainly, Wiles' economic horizons have been limited by his injury. See Bochar v. J. B. Martin Motors, Inc., 1953, 374 Pa. 240, 97 A.2d 813. * * we cannot say that there was a significantly larger element of speculation in arriving at an estimate of Wiles' loss of future earnings than there would be in any ordinary instance requiring an estimate of damages by a jury. Since none of us is capable of foreseeing the future with any substantial degree of certainty every estimate of damages must contain elements of speculation."

Of dispositive significance here is the fact that in Herb v. Hallowell, 304 Pa. 128, 154 A. 582, 85 A.L.R. 1004 (1931), it was held that the trial court correctly submitted the issue of impairment of earning power where a 44-year-old school teacher suffered head injuries in an accident with subsequently prevailing "dizziness, headaches and nausea". There the plaintiff had returned to his teaching employment following his convalescence.

■ In the instant case there was also "headaches, dizziness, ringing in the ears and blurring of vision" flowing from the plaintiff's head injury, *plus* the permanent pelvic fractures with resulting hip deformity and "limping gait".

The jury, on submission of the issue of loss of earning power as an element of damages, could have found that disabling permanent injuries were suffered by the plaintiff, and in considering the plaintiff's "whole span of life" could have determined that her "economic horizon" had been "shortened" with impairing consequence as to future earning power.

It requires no great stretch of the imagination to conclude that in the instant case it might well transpire that the plaintiff will have to give up her teaching employment because of her disabling injuries and that she might be compelled to accept employment at a lesser compensation, and that the jury could have so found. Further, the jury could have justifiably found that at the minimum the plaintiff's opportunities for advancement in the teaching profes-

sion have been diminished by her disability.

What has been said makes it unnecessary for us to reach the other points presented on this appeal with respect to challenged trial rulings of the District Court.

For the reasons stated our prior opinion of June 1, 1967 will be withdrawn, and the Judgment entered below pursuant to the jury's verdict will be reversed and the cause remanded to the District Court with directions to grant a new trial limited to the issue of damages, in accordance with this opinion.