403 A.2d 87

**Alverda M. GARY, Appellant,**

v.

**Clay Irvin MANKAMYER, a/k/a Irvin Clay Mankamyer, Appellee.**

Supreme Court of Pennsylvania.

Argued March 12, 1979.

Decided July 5, 1979.

Nathaniel A. Barbera, Samuel D. Clapper, Barbera & Barbera, Somerset, for appellant.

James B. Yelovich, Kimmel, Rascona, Yelovich & Bowman, Somerset, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

NIX, Justice.

The instant appeal arises out of a motor vehicle trespass action tried before a jury in the Court of Common Pleas of Somerset County, Pennsylvania which resulted in a damage award of $59,800.00 for the appellant, Mrs. Alverda M. Gary, a registered practical nurse and against appellee, Mankamyer. The issue presented focuses upon instructions to the

jury concerning the rule to be applied in ascertaining damages to appellant's loss of earning capacity resulting from appellee's tortious conduct and to the admissibility of actuarial evidence concerning appellant's loss of earning capacity in the future.

The Court of Common Pleas of Somerset County en banc considered and rejected appellee's contentions in a carefully considered opinion passing on appellee's motion for a new trial.

The Superior Court reversed the lower court's opinion based on its reading of our decision in *Kmiotek v. Anast*, 350 Pa. 593, 39 A.2d 923, and granted a new trial limited to the question of damages.

█ Defendant-appellee contends that the evidence presented by plaintiff-appellant showed only a permanent partial impairment of earning capacity and, hence, that it was error to admit into evidence expert evidence by an actuary predicated on the existence of a total impairment of earning capacity. This contention evidences a common, but erroneous, understanding of the law of damages applicable to loss of earning capacity. *See*, Woods, Earnings and Earning Capacity as Elements of Damage in Personal Injury Litigation, 18 Arkansas L.Rev. 304 (1965). Under Pennsylvania law, a plaintiff seeking recovery for total loss of earning power must show two things: (1) a permanent injury and (2) a total impairment of earning power. *Kmiotek v. Anast, supra.* In the case at bar, even appellee's expert medical witness conceded that appellant's injuries were permanent so there is no question of compliance with the first leg of the rule in *Kmiotek*. But appellant reads *Kmiotek* as teaching that a total impairment of earning capacity can be found only where there is total rather than partial physical impairment. This reading of *Kmiotek* confuses loss of earning capacity as an element of damages with permanency of injury. *Shebester, Inc. v. Ford*, 361 P.2d 200 (Okl.1961), Woods, *supra.*

■ On the issue of impairment of appellant's earning capacity, she adduced the testimony of two co-workers, a registered practical nurse with 23 years experience and a nurse with 10 years experience, to the effect that after her injury she was unable to perform essential duties of one in her profession—to wit, lifting and moving patients. Nurse Miller further testified that a licensed practical nurse would not be hired if she could not move or lift patients. A hospital administrator in the Community Hospital in which appellant worked, with 23 years experience, testified to the same effect. He further testified that appellant's continued employment was dependent on her co-worker's willingness to assist her in positioning, moving, lifting, and transporting patients and that if the present co-workers retire or change and others are not willing to help her, she would have to be dismissed from her job. In other words, there was testimony that appellant was incapable of performing all the physical functions necessary for continued employment as a practical nurse and that her capacity to perform these functions was different following the accident than it was before the occurrence. This evidence was, under the circumstances of this case, sufficient to take the question of the extent of appellant's disability and its impact on her earning capacity to the jury. *Stark v. Lehigh Foundries, Inc.,* 388 Pa. 1, 130 A.2d 123 (1951); *Havens v. Tonner,* 243 Pa.Super. 371, 365 A.2d 1271 (1976).

■ Such evidence, on the basis of which a reasonable jury could reasonably infer appellant's physical inability to continue work as a practical nurse, also forms an adequate predicate for the challenged testimony of the actuarial expert who calculated appellant's projected future loss of earnings based on an assumption of total loss of earning capacity. As the Superior Court stated in a case where no such evidence of permanent physical incapacity was introduced, "It follows that the economist who calculated projected future loss of earnings should not have been permitted to make that calculation on the assumption of total and perma-

nent disability *without evidence of physical or mental disabilities which would prevent appellee from continuing working as a salesman or in some related capacity."* *Havens v. Tonner*, 243 Pa.Super. at 377, 365 A.2d at 1274. Appellant in the case at bar fully satisfied the evidentiary guidelines set forth in *Havens* and *Kmiotek* on the issue of loss of earning capacity as an element of damages for personal injury. The trial judge's charge to the jury on this issue reflects a correct formulation of the standard to be applied:

One of the things you must determine before you ever even think about the testimony of the actuary is whether or not there has been an impairment of the earning capacity and the degree of that impairment. You will consider carefully the evidence surrounding this issue and whether or not standing on her own two feet—so to speak—she is capable and will be capable in the future of carrying on all of her duties as a licensed practical nurse. *The question under the law is not whether she can hold the job and receive her paycheck with the aid of other people, but whether or not she can hold the job and do the work required of her as a licensed practical nurse without the aid of someone else.*

It is well established that the fact and the extent of the impairment are jury questions, *Stark v. Lehigh Foundries, Inc., supra,* and that no expert testimony is required in this jurisdiction to show loss of earning capacity, *Goodhart v. Pennsylvania RR Co.,* 177 Pa. 1, 35 A. 191 (1896) but where expert testimony is preferred and relevant it is admissable, *Havens v. Tonner, supra.*

▮▮ Appellee also contends that he was prejudiced by the trial court's grant of appellant's motion after the close of the evidence and before the submission of the case to the jury to amend the complaint to assert a claim for total rather than partial impairment of earning capacity. We doubt whether the record supports appellee's claim that he had no prior notice of appellant's reliance on a total impair-

ment theory of earning capacity. Nevertheless, assuming arguendo that this is so, his allegation misconceives the function which the distinction between total and partial impairment of earning capacity serves in the law of personal injury damages. The rule is well stated as follows: "If the plaintiff's incapacity is or probably will be partial (rather than total) for any or all of its duration, defendant is entitled to have deducted the amounts which plaintiff earns or reasonably could earn during the period of partial disability." 2 Harper and James, The Law of Torts, § 25.8. The purpose of the distinction then is to afford defendant an opportunity to show plaintiff's continued earning capacity in order to reduce or eliminate any recovery under this classification of damages. But the defendant's right to introduce such evidence in mitigation of damages claimed in the category of lost earning capacity is recognized under Pennsylvania law under all circumstances and is not dependent on whether the incapacity is characterized as partial or total. *See McKenna v. Citizens' Natural Gas Co.*, 201 Pa. 146, 50 A. 922 (1902) (defendant entitled to introduce evidence to show that plaintiff's services were worth less than what he received in salary).

■ Since appellee's freedom to proffer such evidence or to cross examine appellant's witnesses on the subject of her continued earning capacity was unaffected, his contention that he was prejudiced by the judge's grant of appellant's motion to amend is without merit. *Kilian v. Allegheny County Distributors*, 409 Pa. 344, 185 A.2d 517 (1962); *Bogert v. Allentown Housing Authority*, 426 Pa. 151, 231 A.2d 147.

Accordingly, the order of the Superior Court granting the appellee's motion for a new trial is reversed and the order of the Court of Common Pleas of Somerset Court denying said motion is hereby affirmed.

ROBERTS, J., concurs in the result.